UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

HUMPHREY HUGH HALLADENE,

                        Petitioner,

    -against-

THOMAS DECKER, *in his official capacity as Director of the New York Field Office of U.S. Immigration & Customs Enforcement*; and CHAD WOLF, *in his official capacity as Acting Secretary, U.S. Department of Homeland Security*,

                        Respondents.

------------------------------------- x



MEMORANDUM DECISION
AND ORDER

20 Civ. 2883 (GBD)

GEORGE B. DANIELS, United States District Judge:

    Petitioner Humphrey Hugh Halladene seeks a writ of habeas corpus, challenging his ongoing detention by Immigration and Customs Enforcement ("ICE") at Hudson County Correctional Facility ("HCCF") as a violation of due process. (*See* Pet. for Writ of Habeas Corpus, ECF No. 1.) Specifically, he argues that Respondents have failed to provide him with adequate protection from COVID-19 and adequate medical care, given his heightened risk of contracting COVID-19 and suffering serious harm. (*Id.* ¶¶ 69-76.) On April 9, 2020, Petitioner moved for a preliminary injunction and temporary restraining order ordering Respondents to release him and enjoining them from arresting him for purposes of civil immigration detention until such time as they can demonstrate that his detention would create no incremental risk of illness or death from COVID-19. (Pet'r's Mot. for Order to Show Cause and Prelim. Inj. and TRO, ECF No. 8.) This Court denied Petitioner's motion. (Mem. Decision and Order ("Prior Decision"), ECF No. 21.) Petitioner had not demonstrated that Respondents were not adequately protecting him from COVID-19. Moreover, Petitioner was unlikely to prove that Respondents were providing

inadequate medical care through deliberate indifference to his medical needs, because Respondents reasonably relied on existing CDC guidance in not applying additional safety protocols to Petitioner based on his health conditions.

Petitioner again moves for a preliminary injunction, but this time only relies on the argument that Respondents failed to provide adequate medical care.[1] (Mem. of Law in Supp. of Pls' Mot. for a Prelim. Inj. ("PI Mem."), ECF No. 24, at 17.) Alternatively, Petitioner requests a bail hearing before this Court "where Respondents must prove, by clear and convincing evidence, that Mr. Halladene's ongoing detention is necessary and does not violate his due process rights." (Notice of Mot. for Prelim. Inj., ECF No. 23.) Petitioner's second motion for a preliminary injunction is DENIED.

## I. LEGAL STANDARDS

"[A] preliminary injunction is 'an extraordinary remedy never awarded as of right.'" *Benisek v. Lamone*, 138 S. Ct. 1942, 1943 (2018) (per curiam) (citation omitted). To obtain a preliminary injunction, the moving party must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Additionally, where the proposed injunction "will alter rather than maintain the status quo the movant must show clear or substantial likelihood of success." *Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir. 2000) (citation and internal quotation marks omitted).

---

[1] Petitioner seeks relief for a second time based on a supplemented factual record. (PI Mem. at 1.) Specifically, Petitioner points to additional medical conditions not present at the time this Court considered his first motion, updated CDC guidance regarding individuals at risk for serious complications from COVID-19, allegedly worsening conditions at HCCF, and Respondents' decision to relax social distancing measures at HCCF. (*Id.*)

2

## II. PETITIONER IS UNLIKELY TO PROVE THAT RESPONDENTS WERE DELIBERATELY INDIFFERENT TO HIS MEDICAL NEEDS.

To prevail on a substantive due process claim, a civil detainee must demonstrate that "government action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Charles v. Orange Cty.*, 925 F.3d 73, 85 (2d Cir. 2019) (quoting *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005)). For substantive due process claims alleging inadequate medical care, this standard is met when a civil detainee has "a serious medical need" and establishes that the government "acted with deliberate indifference to such needs." *Id.* at 86.

Whether Petitioner's medical conditions present a serious medical need is an issue that can be faithfully debated. Petitioner is a 54-year old man who suffers from hypertension (high blood pressure), pre-diabetes, and sleep apnea. Additionally, he has a history of obesity, though he is not currently obese. Petitioner argues, supported by the conclusions of two medical experts, that the combination of these medical conditions renders him uniquely vulnerable to serious illness or death if he contracts COVID-19. (PI Mem. at 5–9, 17–19.) Current CDC guidance indicates that individuals with hypertension may be at an increased risk for severe illness from COVID-19. *See Coronavirus Disease 2019 (COVID-19) – People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated August 14, 2020). Respondents acknowledge this, but distinguish between those conditions identified by the CDC as ones for which people *are* at an increased risk and those for which people *might* be at an increased risk, only the latter of which currently includes hypertension. (Mem. of Law in Opp'n to Pet'r's Second Mot. for Prelim. Inj., ECF No. 27, at 6–7.) The CDC also advises that the risk for severe illness increases with age, though there is no specific age cutoff to identify those at significant risk. *See Coronavirus Disease 2019 (COVID-19) – Older Adults*, Ctrs. for Disease Control & Prevention,

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated August 16, 2020).

Petitioner's other medical conditions do not appear to place him at high risk, according to current CDC guidance. Petitioner cites limited evidence for the proposition that sleep apnea leads to severe consequences from COVID-19 infection. Moreover, though diabetes and obesity are considered by the CDC to be high-risk factors, Petitioner does not currently suffer from either of these conditions. To be sure, Petitioner's medical expert maintains that Petitioner is at "very high risk of developing clinical diabetes in the near future," (Aff. of Emma Kaplan-Lewis, MD, ECF No. 24-6, ¶ 21), and should that occur, Petitioner would be considered by the CDC to be a high-risk individual. However, Petitioner's current conditions do not qualify as a serious medical need.

Even if Petitioner's particular combination of conditions created a medical risk profile that was sufficiently serious, Petitioner has not demonstrated that Respondents are acting with deliberate indifference to such needs. Petitioner argues that Respondents' actions evince deliberate indifference, because Respondents have neglected to categorize Petitioner as high-risk and apply special protocols to his detention. Petitioner contends that Respondents' existing policies and procedures are inadequate to safeguard his health. (PI Mem. at 19–23.) Importantly, deliberate indifference requires more than mere negligence. Government actions may rise to the level of deliberate indifference when they involve "culpable recklessness, i.e., an act or a failure to act that evinces a conscious disregard of a substantial risk of serious harm." *Charles*, 925 F.3d at 87 (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 107 (2d Cir. 2000)) (alterations omitted). Here, Respondents have not explicitly categorized Petitioner as a high-risk detainee, but Petitioner's current conditions at HCCF are not so egregious that they shock the conscience and demonstrate a conscious disregard of Petitioner's risk of contracting COVID-19.

4

In denying Petitioner's previous motion for preliminary relief, this Court described the various protocols that HCCF implemented during intake and throughout the facility to prevent the spread of COVID-19. (*See* Prior Decision at 5.) Since then, HCCF has taken further steps to protect all detainees and Petitioner, in particular. During the week of June 8, 2020, all detainees at HCCF were tested for COVID-19.[2] (Twentieth Am. Decl. of Director Ron Edwards ("Edwards Decl."), ECF No. 32-1, ¶ 24.) Petitioner tested negative and is now housed without a cellmate in a static population in which all detainees have tested negative. (Decl. of Ralph P. Woodward, MD ("Woodward Decl."), ECF No. 29, ¶¶ 10, 12, 13.) The detainees in Petitioner's unit represent a fixed population with no positive COVID-19 tests and no new untested members. Petitioner argues that these measures are ineffective, because detainees in Petitioner's unit regularly interact with HCCF staff. (Pet'r's Reply Brief in Further Supp. of His App. for a Prelim. Inj., ECF No. 30, at 6.) However, all staff members are screened before entering the facility, which includes a temperature check by a medical professional. (Edwards Decl. ¶¶ 12(c), (g).) Additionally, correctional officers are subject to random COVID-19 testing. (*Id.* ¶ 22.) Respondents have made significant efforts to limit Petitioner's exposure to a controlled group of individuals.

Further, due to Petitioner's diagnosed hypertension, Petitioner is subject to continuous monitoring. A nurse visits Petitioner twice a day to provide his prescribed medication. (Decl. of Amanda Bernardo in Supp. of Pet'r's Mot. for a Prelim. Inj. ("Bernardo Decl."), ECF No. 24-2,

---

[2] Since this Court's previous decision, four additional detainees and nine additional staff members have tested positive, for a total of seventeen detainees and 103 staff members who have tested positive at HCCF since the start of the pandemic. (Edwards Decl. ¶ 20.) All detainees who tested positive have since recovered without hospitalization. (*Id.* ¶ 23.) All but one of the correctional officers who tested positive have recovered and returned to duty, (*id.* ¶ 22), but four staff members have tragically died from complications related to COVID-19, (*id.* ¶ 21). Additionally, since this Court's previous decision, the detainee population at HCCF has dropped from 123 to 56. (*Id.* ¶ 3.)

5

¶ 20.) His blood pressure and heart rate are also measured at least twice each week. (*Id.*; PI Mem. at 10, n.18.)

Still, Petitioner raises, as he did in his first motion, a number of objections to the protocols in place at HCCF. Petitioner argues, *inter alia*, that HCCF's COVID-19 testing is insufficient, certain practices (e.g., cohorting of asymptomatic detainees) may increase the spread of COVID-19 at the facility, and temperature checks for new detainees and entering staff are poor predictors of illness. (PI Mem. at 20–21.) At the same time, Petitioner points to the fact that his temperature has only been checked twice as evidence of Respondents' inadequate medical care.[3] (*Id.* at 10.) He also takes issue with the hygienic and sanitation measures at HCCF. Petitioner acknowledges that common areas are cleaned twice each day, but objects to the fact that cleaning is left to the detainees and asserts that the cleaning is not frequent or thorough enough to guard against infection. (*Id.* at 14.) Further, though Petitioner is provided with soap, he contends that it is of poor quality, and alleges that the mask he received has been replaced just twice in the last three months.[4] (*Id.* at 13, 22.) Additionally, Petitioner maintains that communal cleaning supplies are limited and include a "single, dirty mop" to be shared by the entire housing unit. (*Id.* at 22.)

Petitioner also objects to HCCF's decision to relax certain social distancing measures and allow for more interaction among detainees in communal spaces. (*Id.* at 15–16.) Such measures, however, were implemented after HCCF conducted widespread COVID-19 testing of all detainees, a step that has not been taken by many facilities across the country. Moreover, all detainees who tested positive for COVID-19 have since recovered. (Edwards Decl. ¶ 23.) Accordingly, HCCF's decision to increase detainee interaction was reasonable.

---

[3] Respondents claim that Petitioner's temperature is taken daily. (Woodward Decl. ¶ 11.)
[4] Respondents claim that since April, Petitioner has been provided with a new mask on a weekly basis. (Woodward Decl. ¶ 17.)

Petitioner further contends that he has been in close proximity to numerous detainees who have developed symptoms or tested positive for COVID-19. (*Id.* at 14–15, 21–22.) However, Petitioner's allegations pre-date widespread testing at HCCF and Petitioner's placement in a static population with detainees who have all tested negative for COVID-19. (*See id.* at 14–15; Bernardo Decl. ¶¶ 9–15.)

In sum, Petitioner believes HCCF's efforts to combat the spread of COVID-19 are inadequate for a number of reasons. But Petitioner's dissatisfaction with Respondents' actions and his current conditions do not automatically transform those efforts into deliberate indifference. Despite Petitioner's objections and concerns, Respondents are engaged in ongoing efforts to protect Petitioner and minimize the spread of COVID-19 at HCCF. Petitioner has not met the high standard required to prove that Respondents are deliberately indifferent to his medical needs.[5]

### III.  CONCLUSION

Petitioner is unlikely to succeed on the merits of his substantive due process claim alleging that Respondents are providing inadequate medical care. Petitioner's motion for a preliminary injunction, (ECF No. 23), is DENIED. The Clerk of Court is directed to close the motion accordingly.

Dated: New York, New York
      September 1, 2020

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge

---

[5] Because Petitioner has not demonstrated that he is likely to succeed on the merits, this Court does not reach the other three factors to be examined for preliminary relief, namely irreparable harm, the balance of the equities, and the public interest.